Clerk, please call the next case. Ms. Ware. Good morning. May it please the court. My name is Jessica Ware on behalf of the Office of the State Appellate Defender, and I represent the appellate, Mr. Timothy Washington. Your honors, I'd like to reserve five minutes for rebuttal. Today I'd like to focus my arguments on issues two and then issues one of the briefs. Your honors, this court should remand Timothy Washington's case for resentencing because the trial court improperly relied on the fact that there were cameras present in the courtroom as a reason for imposing an increased sentence in Mr Washington's case. In other words, the trial court imposed an aggregate life sentence in prison on Mr Washington, in part because the cameras were present. This resulted in an abuse of discretion because the trial court unfairly penalized Mr Washington for the actions of the third party, the media that is, in requesting to cover his case. This is something that was beyond Mr Washington's control. Well, part of sentencing, one of the things is need to deter others, right? And whether others can get deterred or not deterred, that's also beyond the defendant's control too, isn't it? Well, the need to, the trial court can consider the need to deter others from the same conduct, but if the need to deter others from the same conduct exists, it exists whether the cameras are present at not, cameras are present or not. So for the trial court to use the fact that the cameras were present was an arbitrary application of that Didn't she really say though that she never thought that, um, you know, deterrence really, you know, that these sentences really worked to deter crime, but now maybe because there's more, um, publicity around them, maybe it would work to deter crime. I mean, I mean, I think that's, I mean, is that somehow improper saying that she's now reconsidered? Deterrence is an aggravating factor? Yes. Now don't get me wrong. Deterrence is a proper aggravating factor, but the judge can't sentence on arbitrary reasons, meaning the judge can't just single him out because the cameras were present. Mr. Washington had no control over that. You know, the Supreme Court created the pilot program for cameras in the courtroom and the media companies can request to cover certain cases. It's purely their decision which cases they want to cover. The defendant has no control over that. So Mr. Washington had no control over whether or not the cameras were present in his case or not. Well, let me give you another scenario. Let's suppose that jurisdiction, wherever it is, all of a sudden you're handling a lot of this certain type of crime. And all this other crime isn't being committed by the defendant. He just happens to be committing one. And the judge says, I'm gonna, I'm gonna send a message out there that, uh, this is going to get stopped. And why? Because these other people have, a bunch of other people have to be committing the same type of crime the defendant committed. And defendant has no control over these other scofflaws either. But, but just I'm gonna send, I'm gonna send a message with you and I'm gonna put some extra weight on that, that factor in sentencing to get the word out that this has got to stop. And if it doesn't, the penalties are going to be severe. Is that arbitrary? Well, that's not an arbitrary application because the, the judge is basing its decision on the need to deter and the need to deter that conduct exists. And the court said, why? But in the instant case, the judge is saying, I usually don't use this factor, but I'll use it today because the cameras are rolling. That's arbitrary. The court is not, is not saying just that the need to deter conduct exists, but the judge is taking a leap and saying, and because the media is here. Well, but you could judge say, look, I sit in this courtroom and there's a half a dozen people here any day and I use this as a deterrence, but the fact is the only people that know about it are your, you, your attorney and that prosecutor over there. And, but, but, and so how much, whatever sentence I give you, really what deterrence does it have if the folks in the community don't know about it? But today I've got, you know, the camera's rolling. And so today I've got a chance to send a message, you know, the vehicle is here to get the message out amongst the fine citizens of whatever the jurisdiction is. Is that arbitrary? Yes, it's, it's still arbitrary because, because Mr. Washington had no control over that. It's not something that's crime specific or defendant specific, had nothing to do with his particular case or the facts or anything like that. The judge is using the actions of the media company in requesting to cover the case. And I argue that that's still, that that's still arbitrary, your honors. The, the Supreme Court's pilot program for cameras in the courtroom was instituted to bring transparency to the court proceedings, to bring accountability, to allow the public to get an eye view into what's going on in the court system. There's nothing in the language of the policy that shows that it, that the cameras in the courtroom was instituted to act as a penalty or to become something that can be used against the defendant. And had Mr. Washington known that, that this would be used against him, maybe he would have objected to the media's request to cover his case. And if this court affirms the trial court's decision that it's okay to use the fact that the media is present to enhance a sentence, then it will totally hinder the Supreme Court's program, because that, because defendants will just begin to object. I don't want the cameras in my case. I don't want it in my case. And that'll totally hinder the program, which was designed merely just to bring transparency and to bring accountability. It was not designed to become a penalty to the defendant. Your Honors, the state does not dispute that Mr. Washington had no control over whether or not the cameras were present in his case. The state does not dispute that the cameras being present is a factor that's not crime-specific or defendant-specific. The state's only argument is that deterrence becomes more relevant when the cameras are present. But all of that is speculative, because the judge at the time of sentencing does not know that this event is going to be publicized. Just because the cameras are present, that doesn't mean anything. I mean, the media company could turn around the next day and decide, oh, we want to cover this, you know, breaking story that just came out. We're not even going to put this in the paper. We're going to, you know, this story gets bumped for something else. And those are the types of decisions that media execs make all the time. And so the judge is taking the leap by just assuming that because the cameras are present, this case is going to get all this publicity. And that's purely speculative. Well, it's any less speculative than when the judge says, I need to deter others. I think history tells us a lot of, not a lot of people are being deterred by these sentences. And whether, and it may never deter anybody. And my guess is it often doesn't, but whether it does or not, it's a happenstance, isn't it? And that would have been fine if the judge would have said, I need to deter others. That would have been totally fine. That's, the statute says that the judge can do that. But for the judge to say, I'm only going to use that factor in this particular case because the cameras are present, that makes the application of a proper factor improper because it's arbitrary. Your Honor, so this just highlights why considering the media presence in the courtroom is a completely arbitrary application of the aggravating factor of deterrence. And if this court affirms a trial court's decision, it will hinder the Supreme Court's pilot program and the goals of it. I'd like to move on to argument one, if you don't mind. Thank you. Your Honor, Timothy Washington was subject to a firearm enhancement of 25 years to natural life in prison for the personal discharge of a weapon that approximately caused the victim's death. This sentencing range is unconstitutionally vague because it provides a prior fact with no factors, no criteria, no guidelines whatsoever to help the judge determine where within that broad range a proper sentence should lie for this particular defendant. And under this provision, the judge has unfettered discretion to impose as an enhancement a sentence of up to life in prison. And the maximum on the base for murder is 60, but the judge with this firearm enhancement statute has the discretion to impose up to life without any factors, any guidelines in the statute that the judge is supposed to consider in this case. And that's what we have here with the statute. The range is so broad and there are no guidelines, and so the judge is left up to the judge's own whim to decide what the judge is going to use to determine, you know, where the defendant should be sentenced within the range. What's the, like on a class act, is that 6 to 30? Yes. Okay. What about, so there's 24 years, what about the discretion within that? Well, there are statutory aggravating factors in the code that the judge considers for that, and that's purely outlined. The judge is supposed to consider this, this, this, and this. But when it comes to the firearm enhancement, there are no criteria. There are no guidelines at all. So we don't know what the judge found that warranted a sentence of life on just the enhancement. You know what I mean? Like the judge, whenever the judge sentences a defendant to more than 25 years on the add-on, the defendant has no meaningful way to challenge the judge's use of discretion, because the defendant doesn't know what factors the judge used. The defendant can't say, hey, that factor was improper, or that factor was improper. The appellate court has no meaningful way to review the judge's use of discretion in crafting the sentence, because there are no guidelines. The judge is purely left up to its own whim to decide what sentence to give the defendant. And in this case, Mr. Washington got the max, and he's left with no meaningful way to challenge that. And this statute gave the judge the ability to do that without any... You'd still argue it's an abuse of discretion, right? To get the maximum outcome. But without knowing what factors or what guidelines the judge is able to consider, Mr. Washington doesn't have a meaningful way to point to anything that was improper or anything that the judge considered that was wrong, because we don't know what the judge considered in making that determination. But you can make the argument, no matter what that judge considered, here are the facts, appellate court, here are the facts, the circumstances of this fellow, and then you talk about aggravation and mitigation and all that kind of stuff, and say, in light of these facts, maxing this fellow out, and compare it with some other criminal where he uses a gun, and maybe a gangland hit or something, an execution. That's a different... This doesn't... And the judge didn't explain anything about why this fellow got the max, and it was abuse of discretion. We still got that argument, though, didn't we? No, because the judge used all those statutory factors already to enhance the base sentence. Mr. Washington almost got the max on the base sentence for murder. He got 50 out of 60. So the judge has already used those statutory aggravating factors to enhance that base sentence. So it's not clear what other factors there were present for the judge to enhance the add on to life. Okay. I get it. All right. Also, it would be jealous counting. So if they said, gee, these same factors apply to the 25 to life add on, and then the judge used the same factors there to say, gee, you're a bad guy, this is a horrible crime, you... You're a bad guy. And so I'll give you the max on the underlying sentence. And for the same reason, I'm also giving you life on the add on, right? And then you would say, gee, that's a double enhancement. Mm-hmm. I suspect I wouldn't agree with you, but so is that the point of getting, you want these statutory factors? We want the statute to give some guidelines. I mean, with this statute, the court is able to impose the maximum penalty in the state of Illinois. I mean, certainly we would not tolerate this in the death penalty context. And this implicates some of the same concerns, this being the highest penalty now in Illinois. You know, there needs to be some guidelines. You know, with the death penalty, there were certain aggravating factors, mitigating factors, and the judge, those types of things guided the judge's discretion and determining. But with this life, this sentence from 25 years to life, there is nothing. There are no factors. And if the judge were to consider those same aggravating factors that he considered in enhancing the base sentence, that would be an improper double enhancement. And the case law tells us that. And so, isn't part of the problem that this is the same kind of situation that led the federal Congress and our state legislature to start doing sentencing guidelines and having categories of penalties? Because it lends itself to totally arbitrary sentencing on the part of the trial court. One of the things that jumps to mind is that you can have exactly the same crime with all of the same attendant circumstances. And under this firearm enhancement, a trial court could decide because one of the defendants is white and one is black, I'm going to give a higher sentence to the one rather than the other, whichever way it would go. It leaves the situation wide open for totally arbitrary sentencing. Is that your concern? I agree. Yes. And with this statute, because the range of penalties is so high, it's up to life, you know, there has to be something. You know, in order to pass the constitutionality test, the terms can't be so indefinite that people would have to guess at their meaning or differ as to its application. One judge thinks this is a factor, the other judge thinks that's a factor. And nobody knows what factors are being used to enhance these sentences in this way. We'll just stop the defense from coming in and saying, look, under any circumstances, a life sentence for my client was an abuse of discretion. Well, that doesn't obviate the argument that the statute is still vague. It's left wide open. There are no guidelines. There are no criteria. There are no factors. I mean, the judge in handing down the sentence could guess and come up with some factors, what he or she thinks. But how do we know that's going to be applied uniformly across the board? How do we know what one judge thinks is not going to be, you know, the same as what another judge thinks? That's why we need the guidelines. That's exactly why the statute is vague, because it's leaving the trial court to guess, to come up with its own idea of what they feel is an appropriate factor to consider to enhance the sentence. So if this court has no further questions, I'd like to move to rebuttal. Thank you, Ms. Weir. Ms. Duffy, good morning. Good morning, Your Honors and counsel. As to issue number two, the deterrence factor in imposing sentence, that is a statutory sentencing factor trial judges are allowed to use in any sentencing case. In this case, there was discussion from the state's attorney about the fact that the cameras were in the courtroom under the Supreme Court's program. If you want to lay some blame, perhaps that's where it belongs, but that's why they were there. The press asked to be there under that program, and they were there. The trial judge didn't control that. State's attorney didn't control that any more than the defendant controlled that. The comment that perhaps, you know, I usually don't believe much in the deterrent effect of the sentence because nobody knows that these sentences are being meted out. There's always discussion about it, you know, well, you'll find out on the street that, you know, they're imposing sentences for this, that, or some certain judge sentences more harshly than others. But there's no question in this case that if there are cameras in the courtroom and the sentence might deter someone else from going out and shooting another 17-year-old young man in the street, attempting to kill another, carrying around weapons as a felon, that is a problem on the streets of Pankakee and Peoria and Joliet and any sizable city in this state, in this country. So if the Supreme Court's pilot program expands to other court districts and circuits and we get cameras in the courtroom all over the state, we can expect as a matter of routine that we'll be getting greatly enhanced sentences? No, but you might expect that the sentences that are handed out have a more deterrent effect than they do at this point. And that's a proper sentencing factor. That wasn't the only sentencing factor by any means. This defendant is a convicted felon. He had five previous felony convictions. He committed a heinous act. You know, who gave him the right to carry a weapon illegally, to go out and discharge a firearm, kill a 17-year-old young man, and attempt to kill another? That's not the question. I mean, the question that we're focusing on is cameras and deterrents. Yes, but you're thinking that is this the only reason he got the sentence he got? No, it isn't. No, but my question was, once we see the expansion of cameras in the courtroom, are we going to see, as a matter of routine, greatly enhanced sentences? No, but what you might see is a greater deterrent effect. And as to issue number one, the constitutionality of the statute, I think there are two cases I cited in my brief from the first district where they have held that the statute is not unconstitutionally vague underneath the same arguments. Now, I know that there are two parts to this. The enhancement is mandatory between 25 years. The judge must impose an enhancement. What sentence he imposes within that range of sentences is within his discretion, just as any sentence within a sentencing range provided by statute would be. If I recall correctly, the trial judge in this case, I mean, we had sentencing hearing. There were mitigating factors presented, aggravating factors. I recall that she did say, she talked about his horrendous criminal history. But all of those factors which went to culminate in his sentence for murder, attempt murder, aggravated unlawful use of a weapon, a weapon in the case, all of those sentencing factors also go to help the trial judge decide what sentence within this range I'm going to impose. They have not argued that this sentence was an abuse of discretion. And Justice Schmidt is right. If you think that this is an abuse of discretion, then say so. But you didn't. The statute is not unconstitutional. And if you have a problem with whatever sentence the judge imposed within the sentencing range, then raise the issue. But you didn't do that. When the hearing is conducted, is there a separate portion for an underlying sentence? No, it's not bifurcated. So it's not bifurcated in that? No. And does the judge, I know this judge appears to not have done that, but do judges sometimes say, okay, I'm considering this for the underlying and this factor for the other, or it's just one? Just one sentencing hearing. The argument by the state was they asked for 60 years, she didn't impose 60, she imposed 50. They did ask as part of their argument, which was given all at the same time, for a life sentence because of his criminal history and the seriousness of the offenses. There's nowhere, I guess you could do it that way, you certainly could. And some judges like to speak a little more at sentencing hearings than others do. Some speak too much, some not enough. So... Well, and the Supreme Court has never said that you can't use the same factor to increase, to exercise your discretion within the underlying sentence and the same factor in the add on, the same factors in the add on. No, no. Those cases all talk about two separate offenses. That's right. And that is true for every mandatory sentence enhancement case that I have ever seen. And whether it's... There are other sentence enhancements, not as heavy as this, but other mandatory sentence enhancements where the same factors that are used to impose the sentence for the triggering offense and the enhancement are exactly the same. The sentencing hearings are conducted exactly the same. Thank you. Thank you. Ms. Ware, any rebuttal? Yes, thank you. Just a few things. On the cameras in the courtroom issue, counsel mentioned that the trial court didn't control whether the cameras were there, the defendant didn't control it, nobody controlled it. But it is the judge's discretion, the trial judge's discretion, whether or not to grant or deny the media's request for coverage of the case. So while a defendant could object to it, ultimately, it's the trial judge's decision whether or not to allow the cameras there. And Mr. Washington does not object to having the cameras present, that wasn't the problem. The problem with this is the judge using the fact that the cameras are present to enhance his sentence. That's the arbitrary application of the deterrence factor, which is something that Mr. Washington could not have anticipated. Regarding... Also, I just wanted to reiterate that the standard is, because counsel mentioned that the cameras wasn't the only factor that was considered an aggravation, but the standard is, if this court can't determine that the weight given to that improper factor was so insignificant that it didn't lead to a greater sentence, that a new sentencing hearing is necessary. And that's what we have in this case. We can't say that it was so insignificant that it did not affect the sentence because the judge stated it on the record that that was one of the reasons why. Moving on to issue one from the brief, counsel mentioned that Butler and Thompson has already decided this issue, but I'd just like to mention that the reasoning in Butler is flawed and this court should not follow it. Butler says that the injuries that are enumerated in the firearm add on, ranging from great bodily harm to death, that those injuries can be used as guidelines in fashioning a sentence within the range. But if we use the logic of Butler and the range of injuries is supposed to determine the range of sentences, then by virtue a defendant that discharges a firearm that causes death, that should merit a life sentence. But that's usually not what we see. I mean, even if we look at Butler, Butler got 30 on the add on. Thompson got 40 on the add on. Washington got 100 on the add on. But by Butler's logic, if those injuries are supposed to determine where within the range the add on sentence should be, then that's a forgotten life. Which just shows how important it is to have these guidelines, because it's just left completely open for the court to determine. Also, I wanted to mention that those injuries that the Butler court said can be used as guidelines, those are just the triggering factors that trigger the enhancement's application. So the statute reads, if the defendant personally discharges a firearm that approximately causes one of these injuries, then the add on should be added. So those injuries in the statute are just the triggering factors that cause the statute's application. Nowhere in the statute does it say that those triggering factors are also supposed to serve as guidelines. So Butler's interpretation of the statute is flawed, and we ask for this court not to follow Butler. Also, Your Honor has mentioned, has the Supreme Court spoken on whether or not it's okay to doubly enhance, to count these factors twice. But the Supreme Court has said in Seguenzo Brito, which I cited in my brief, that the double enhancement rule prohibits the same factor from being used to enhance a sentence twice. And that's cited in my brief. Well, but in the case of an add on, doesn't it make sense? For example, I say, you've got some really bad guy there that it's clear to the judge and any reasonable person that this person has committed horrible crimes, and if left to his own devices, will do it again. And so, but because the first degree murder, he's got 50, and he says, I'm sentencing you to 60, whatever the max, I'm sentencing you to that, because you are a rotten, no good guy, and if I don't keep you locked up, you're going to do it again. And then it comes to the add on, and for those same reasons, because you're a rotten, no good guy who will kill and rape and murder and pillage if you're out of jail, I'm giving you the life enhancement. What's wrong with that? It's a double enhancement. It's double counting the same exact factors twice, which is what the Supreme Court has prohibited in sentencing. But not in this, not in this, on these set of facts. They were talking about two different, two different offenses, as opposed to a single offense and an enhancement. The case you cite was, there were two different crimes involved. In Seguenza... In Seguenza, Brito, weren't there two different offenses? I'm not sure. I'd have to go back and look at that. But the same factor cannot be used twice. So if the judge is considering the exact same factor, then that violates the double enhancement rule. And nowhere in the statute itself, in the add on statute, does the legislature outline any intent to doubly enhance the sentence. There's no language in there that says that the statutory aggravating factors can be used twice. It's not in there. And so some guidance is needed, because it's left wide open. It's a great range. The penalty is very, very high. Implicates some of the same concerns as the death penalty. Some guidance is needed from the legislature to help guide the sentencer's discretion with this penalty. Thank you. Any other questions? Okay, thank you, Ms. Ware. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in recess until 1.15.